UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE A. TOLAN, | ) | CIVIL ACTION NO. 4:20-CV-1675 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Nicole A. Tolan, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") terminating her disability benefits because she was found "not disabled" as of March 1, 2018. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision must be AFFIRMED.

II.    BACKGROUND & PROCEDURAL HISTORY

According to the ALJ's decision, in a determination dated November 4, 2003, Plaintiff was found disabled beginning on August 1, 2002. (Admin. Tr. 15). In her initial application for benefits, Plaintiff alleged she was unable to work due to the following conditions: Acute Myeloid Leukemia; Dry Eye Syndrome; Graph Versus Host Disease; and because she was immunosuppressed due to Graph Versus Host Disease. (Admin. Tr. 152).

On June 5, 2014, Plaintiff's status was reviewed, and her benefits were continued because Plaintiff's condition did not medically improve during the period of review. (Admin. Tr. 154). In support of that conclusion, it was noted that Plaintiff was:

> On multiple meds including Cellcept. Must avoid sun exposure, public places, and mold spores from common house plants. Oncology exam 11/13/12 notes progression of oral GVHD symptoms since decreasing MMF [(Cellcept)]. Chronic eye dryness and fatigue. Ongoing GVHD requiring intermittent dosing with Medrol [(steroid)] pack. Symptoms of burning pruritis, throat tightening, moth [sic] sores, and ocular irritation.

(Admin. Tr. 154).

In March 2018, Plaintiff's status was reviewed a second time. On March 12, 2018, a decision was issued terminating Plaintiff's benefits as of March 1, 2018. (Admin. Tr. 152-160). In support of that conclusion at the initial level, it was noted that:

> 10/5/2017 Oncology: followed for AML, s/p allogenic bone marrow transplant and chronic GVHD; been off all immune suppression since January 2017; has developed itching but controlled with diphenhydramine, throat is a little tighter; taking multiple meds; good physical exam except scleral injection left greater than right; labs in fine.

(Admin. Tr. 154).

On March 29, 2018, Plaintiff requested reconsideration of the initial decision terminating her benefits. (Admin. Tr. 168).

On October 25, 2018, Plaintiff appeared *pro se* and testified during a hearing at the reconsideration level presided over by Hearing Officer Jonathan Pass. (Admin. Tr. 173-184). Plaintiff's impairments were identified as acute myeloid leukemia, dry eye syndrome, graft versus host disease, and immunosuppressed. (Admin. Tr. 175). During her reconsideration hearing, Plaintiff reported that her impairments affect her ability to: walk, stand, lift, carry, and see. (Admin. Tr. 179).

November 28, 2018, the initial decision terminating Plaintiff's benefits was upheld by the Hearing Officer. (Admin. Tr. 206-213). In support of his decision, the

Page 3 of 52

Hearing Officer noted that Plaintiff had stopped Cellcept (an immunosuppressant) in April 2017. (Admin. Tr. 209). Upon receipt of the decision on reconsideration, Plaintiff requested an ALJ hearing. (Admin. Tr. 191).

On July 9, 2019, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). (Admin. Tr. 33). On August 22, 2019, the ALJ issued a decision terminating Plaintiff's benefits. (Admin. Tr. 26). On September 4, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 215).

On August 12, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On September 15, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision terminating her benefits is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶ 22). As relief, Plaintiff requests that the Court reverse the ALJ's decision and restart benefits, and for such other relief as the Court deems appropriate. (Doc. 1, p. 5).

On April 13, 2021, the Commissioner filed an Answer. (Doc. 13). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 13, ¶ 15). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 15), the Commissioner's Brief (Doc. 18) have been filed. Plaintiff did not file a reply. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A. Substantial Evidence Review – the Role of This Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE EIGHT-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

After a claimant receives disability benefits, his or her entitlement to continued benefits may be reviewed periodically. During this evaluation, the Social Security Administration may find that the claimant is no longer entitled to benefits. 42 U.S.C. § 432(f). A key part of this analysis involves comparing the severity of

---

[2] Throughout this opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on August 22, 2019.

the impairment at the time of the most favorable recent disability determination with the current severity of that impairment. 20 C.F.R. § 404.1594(b)(7), (c)(1). In doing so, an ALJ uses an eight-step process. 20 C.F.R. § 404.1594(f).

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).

At step two of this process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1594(f)(2). If the ALJ finds that the claimant has a listed impairment at step two, the claimant's disability continues. *Id.* If the ALJ finds that a claimant does not have a listed impairment at step two, the ALJ proceeds to step three.

At step three, the ALJ determines whether "medical improvement" occurred. 20 C.F.R. § 404.1594(f)(3); *see also* 20 C.F.R. § 404.1594(b)(1) (defining "medical improvement" and providing examples). If the ALJ finds that medical improvement occurred, the ALJ proceeds to step four. 20 C.F.R. § 404.1594(f)(3). If no medical improvement occurred, the ALJ proceeds to step five. *Id.*

At step four, the ALJ determines whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4); *see also* 20 C.F.R. § 404.1594(b)(2) (defining medical improvement not related to the ability to work

Page 8 of 52

and providing examples) and 20 C.F.R. § 404.15294(b)(3) (defining medical improvement related to the ability to work and providing examples). If there is medical improvement that is not related to the claimant's ability to perform work, the ALJ proceeds to step five. 20 C.F.R. § 404.1594(f)(4). If the medical improvement *is* related to the claimant's ability to perform work, the ALJ proceeds to step six. *Id.*

At step five, the ALJ determines whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. *See* 20 C.F.R. § 404.1594(d) (first group of exceptions) and 20 C.F.R. § 404.1594(e) (second group of exceptions). If an exception from the first group (20 C.F.R. § 404.1594(d)) applies, the ALJ proceeds to step six. If an exception from the second group (20 C.F.R. § 404.1594(e)) applies, the claimant's disability ends. If no exceptions apply, the claimant's disability continues.

At step six, the ALJ determines whether all the claimant's current impairments, in combination, are severe. 20 C.F.R. § 404.1594(f)(6). If the ALJ finds that the combination of the claimant's current impairments are not severe, the claimant is no longer disabled. *Id.* If the ALJ finds that the combination of claimant's current impairments are severe, the ALJ proceeds to step seven. *Id.*

At step seven, the ALJ evaluates the claimant's residual functional capacity based on his or her current impairments to determine whether the claimant can engage in past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant can engage in his or her past relevant work, his or her disability has ended. If the claimant cannot engage in his or her past relevant work, the ALJ proceeds to step eight.

At step eight, the ALJ determines (based on claimant's age, education, work experience and RFC) whether the claimant can do other work. 20 C.F.R. § 404.1594(f)(8). If the claimant can engage in other work, he or she is not disabled. If he or she cannot engage in other work, the disability continues.

The ALJ's determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

In his statement of errors, Plaintiff raises the following issue:

(1)   Whether the administrative law judge committed reversible error in finding that the evidence of record was insufficient to establish that the claimant's disability that began in 2002 does not continue to render her totally disabled and unable to engage in any substantial gainful work activity as defined by the Social Security Act because the administrative law judge['s] findings are not rational, are not based on the substantial competent evidence of record and are not in accord with applicable case law.

(Doc. 15, p. 6).

The Commissioner has reasonably construed Plaintiff's brief as raising the following issues:

(1)   Whether the ALJ's determination that Plaintiff's impairments of GERD and heart palpitations were non-severe is supported by substantial evidence.

(2)   Whether the ALJ's determination that Plaintiff does not meet Listings 7.17 (hematological disorders treated by bone marrow or stem cell transplantation), 13.06A (leukemia), and 14.10 (Sjogren's syndrome) is supported by substantial evidence.

(3)   Whether the ALJ properly evaluated the prior administrative medical findings and medical opinions.

(4)   Whether the ALJ properly evaluated Plaintiff's statements about her symptoms.

A.     THE ALJ'S DECISION TERMINATING PLAINTIFF'S BENEFITS

In his August 22, 2019 decision terminating Plaintiff's disability benefits, the ALJ identified that the most recent favorable decision finding Plaintiff disabled (the "comparison point decision" or "CPD") was issued on June 5, 2014. (Admin. Tr. 17). As of the date the CPD was issued, Plaintiff had the following medically determinable impairments: acute myeloid leukemia in remission, and chronic graft versus host disease bone marrow transplantation. *Id.* At the time of the comparison point decision, Plaintiff's impairments:

> were found to result in claimant needing multiple medications including Cellcept, a medication that weakens the immune system. She also requires ongoing and intermittent dosing of Medrol pack. She had symptoms of burning pruritus, throat tightening, mouth sores and ocular irritation. She must avoid direct contact with sunlight, avoid public places, and even common household plant mold spores. Medical improvement had not occurred, as the claimant was unable to perform work activities at any exertional level on a sustained basis (Exhibit CDR 10B).

(Admin. Tr. 17).

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity through August 22, 2019 (the date of the ALJ's decision). *Id.*

At step two, the ALJ identified Plaintiff's current impairments and evaluated whether those impairments met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. He found that, since March 1, 2018, Plaintiff

has the following medically determinable severe impairments: acute myeloid leukemia in remission, and chronic graft versus host disease bone marrow transplantation. *Id.* The ALJ also identified that Plaintiff has the following medically determinable non-severe impairments beginning March 1, 2018: gastroesophageal reflux disease, obesity, hypertension, vitamin D deficiency, and heart palpitations. (Admin. Tr. 18). The ALJ found that, since March 1, 2018, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Admin. Tr. 18-19).

At step three, the ALJ found that medical improvement occurred on March 1, 2018. (Admin. Tr. 19).

At step four, the ALJ found that Plaintiff's medical improvement was related to her ability to work because it resulted in an increase in Plaintiff's RFC. *Id.*[3]

At step six, the ALJ found that Plaintiff continued to have a severe impairment or combination of impairments since March 1, 2018. (Admin. Tr. 20).

At step seven, the ALJ assessed Plaintiff's RFC based on the impairments present since March 1, 2018. He concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

_____

[3] If an ALJ concludes that the medical improvement is related to the claimant's ability to perform work, the ALJ skips step five and proceeds to step six. 20 C.F.R. § 404.1594(f)(4).

the claimant can climb ramp and stairs, ladders, ropes, or scaffolding, balance, stoop, kneel crouch, and crawl occasionally. She is able to have occasional contact with the public.

(Admin. Tr. 20). The ALJ also found at this step that Plaintiff has no past relevant work.

At step eight, the ALJ considering Plaintiff's age, education, work experience and current RFC, found that Plaintiff has been able to perform a significant number of jobs in the national economy since March 1, 2018. (Admin. Tr. 24-25). In support of his conclusion that Plaintiff could engage in other work, he relied on testimony by a vocational expert that Plaintiff could perform the requirements of the following representative occupations: office helper, DOT #239.567-010; marker, DOT #209.587-034; sorter, DOT #209.687-026; folder, DOT #369.687-018. (Admin. Tr. 25).

B.   WHETHER THE ALJ'S DETERMINATION THAT PLAINTIFF'S GERD AND PALPITATIONS WERE NON-SEVERE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Before evaluating whether Plaintiff met a listing based on her current impairments, the ALJ considered whether  Plaintiff's current impairments were (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test.  20 C.F.R. § 404.1520(a)(4)(ii); SSR 85-28, 1985 WL 56856.

An impairment, or combination of impairments, is not severe if it does not significantly limit a claimant's ability to do basic work activities.   20 C.F.R. § 404.1522(a); *see also* 20 C.F.R. § 404.1522(b) (defining basic work activities). Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

In this case, the ALJ found that Plaintiff's impairments of GERD and palpitations were medically determinable but non-severe. In doing so, the ALJ explained:

> The claimant has the following non-severe impairments, gastroesophageal reflux disease (GERD), obesity, hypertension, vitamin D deficiency, dysphagia, and heart palpitations (Exhibit CDR 4F/19, 5F/19, 24, 13F/5, 18, 25, 16F/25).

> An impairment is non-severe when medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to perform basic work activities (20 CFR 404.1521, SSR 85-28). While a non-severe impairment standing alone may not significantly limit an individual's ability to perform basic work activities, it may affect his or her ability to perform basic work activities when considered in conjunction with the claimants other impairments (SSR 96-8p).

> For claimant's GERD, hypertension, vitamin D deficiency and obesity, she received routine care, with the conditions monitored by her primary

care physician. In regards to claimant's heart palpitations, she underwent an echocardiogram and stress echo, both of which were unremarkable (Exhibit CDR 13F/21, 15/2). Moreover, in regards to claimant's dysphagia, claimant's primary care physician and oncologist monitor this condition. Further, the record contains no documentation of any functional limitations stemming from any of these diagnoses. As such, the record does not establish that these impairments have more than a minimal effect on the claimant's ability to perform basic work activities they are non-severe.

(Admin. Tr. 18).

Plaintiff argues:

The Administrative Law Judge also committed reversible error in finding the Claimant's GERD and cardiac problems not severe impairments. The Administrative Law Judge stated that he included these in providing a reduction of Claimant's residual functional capacity at step 4. Consequently, the Claimant has effectively proven that she has a medically determinable severe impairment; no separate proof is required to show a significant limitation of ability to do basic work activities. (20 CFR 404.1521). Even subjective symptoms, as long as they arise from a medically determinable impairment, must be considered in assessing whether an impairment or group of impairments reduces a claimant's ability to do basic work activities. SSR 96-3p. Any close case is to be decided in favor of finding an impairment to be severe. The records contain legitimate diagnoses. If a doctor has enough information to make a legitimate diagnosis then the claimant has medically determinable impairments. The Administrative Law Judge did not properly explain how these conditions impact on the Claimant's residual functional capacity but do not constitute severe impairments directly related to medically determinable impairments. The Administrative Law Judge compounded his other errors by this error.

(Doc. 15, p. 9).

In response, the Commissioner argues:

Page 16 of 52

First, the ALJ reasonably determined that Plaintiff's GERD was non-severe, as she received routine care with her primary care physician (Tr. 18). The record is consistent with this finding, which showed complaints of increased reflux to Dr. Olshemski in April 2018 (Tr. 472)m but by October 2018, Plaintiff reported "no GERD", and in April 2019 was back to "good control with infrequent breakthrough" (Tr. 476, 492). The ALJ reasonably found that Plaintiff's GERD had no more than a minimal effect on her ability to perform basic work activities, and was non-severe (Tr. 18). Although Plaintiff cites her diagnosis (Pl.'s Br. at 10), "[d]iagnoses alone are insufficient to establish [] severity at Step Two." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007).

Second, the ALJ reasonably determined that Plaintiff's heart palpitations were non-severe (Tr. 18). The ALJ recognized Plaintiff's complaints, but also noted that her echocardiogram and stress echo were unremarkable (Tr. 469-70, 485, 491, 496-97, 503, 505-06, 512, 516). Plaintiff cites her own allegations of palpitations (Pl.'s Br. at 10), but unsupported "allegations, standing alone, are insufficient to sustain the claimant's burden of showing a severe impairment." *See Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 207 n.3 (3d Cir. 2006).

Third, whether the ALJ found Plaintiff's GERD or heart palpitations severe or non-severe was not material to the outcome because the ALJ proceeded beyond step two (Tr. 17-24). *Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found [in claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") The ALJ assessed other severe impairments and continued his analysis through the subsequent steps of the sequential evaluation process (Tr. 29-36). *See* 20 C.F.R. § 404.1594(f) (if an ALJ finds sufficient evidence of continuing disability, the ALJ will make that determination and will not go on to the next step of the medical improvement analysis), 404.1545 (all impairments are considered when assessing RFC); *see Salles*, 229 F. App'x at 145 n.2.

The ALJ then restricted Plaintiff to only light work with additional postural and social limitations (Tr. 20), and Plaintiff failed to show that

her non-severe impairments caused greater limitations than assessed. Indeed, no physician has opined that her GERD or heart palpitations caused any limitations whatsoever. Remand therefore is not warranted based on the ALJ's step two findings.

(Doc. 18, pp. 10-12).

Under the Commissioner's regulations, *all* impairments, both severe and non-severe, must be accounted for in an ALJ's RFC assessment. 20 C.F.R. § 404.1545. Therefore, in cases where the ALJ found at least one impairment medically determinable and severe, an ALJ's unsupported conclusion that one or more other impairments are medically determinable but "non-severe" may be viewed as harmless error unless it appears that the ALJ's error influenced his or her RFC assessment. As explained in *McClease v. Comm'r of Soc. Sec.*,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *See Nosse v. Astrue*, No. 08-[CV-1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).

No. 8-CV-1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); *see also Salles v. Comm. of Soc. Sec.*, 229 F. App'x 140, 145, n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

I am not persuaded that remand is required for further evaluation of Plaintiff's heart palpitations or GERD. There is no evidence that either condition results in any additional degree of limitation.

C.   WHETHER THE ALJ'S EVALUATION OF THE LISTINGS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("listing of impairments"), describes, for each major body system, the severity of impairment that is severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). At step two of the sequential evaluation process in CDR cases, the ALJ considers whether the combination of the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 404.1594(f)(2). If a claimant has an impairment that meets that meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled. *Id.*

However, to qualify for benefits by showing that an impairment, or combination of impairments, meets a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). An

impairment, no matter how severe, that meets or equals only some of the criteria for

a listed impairment is not enough. *Id.*

       1.     Listings 7.17 & 13.06(a)

In his decision terminating Plaintiff's benefits, the ALJ found that Plaintiff

did not meet listings 7.17 or 13.06(a). In doing so, the ALJ explained:

> The undersigned considered claimant's acute myeloid leukemia, and chronic graft versus host complicating bone marrow transplantation, under listing 7.17. Pursuant to listing 7.17, one must consider 7.00F, which indicates that the agency will consider an individual disabled for 12 months from the date of the bone marrow or stem cell transplantation, or we may consider you to be disabled for a longer period if you are experiencing any serious post-transplantation complications, such as graft-versus-host (GVH) disease, frequent infections after immunosuppressive therapy, or significant deterioration of organ systems. The determination of onset of disability is not restricted to the date of transplantation. Here, claimant is more than 12 months post her transplantation, and the record does not indicate she is experiencing any serious post transplantation complications. Further, no medical consultant has indicates that claimant equals this listing. As such, claimant does not meet or equal listing 7.17.

> The undersigned also considered claimant's acute myeloid leukemia, and chronic graft versus host complicating bone marrow transplantation, under listing 13.06(a). Listing 13.06 indicates that an individual is considered under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or step cell transplantation, whichever is later. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system. Here, claimant is more than 24 months since being diagnosed or any relapse, and is more than 12 months post her transplantation. Further, the record does not indicate she is experiencing any serious post transplantation complications. In

addition, no medical consultant has indicated that claimant equals this listing. As such, claimant does not meet or equal listing 13.06(a).

(Admin. Tr. 18-19).

Plaintiff argues:

First, the Administrative Law Judge committed reversible error in finding that Claimant does not meeting listing 7.17- Hematological Disorders treated by bone marrow or stem cell transplantation. Under listing 7.17, disability may be considered for a longer period if the Claimant experiences any serious post transplantation complications such as Graft Versus Host Disease, frequent infections after immunosuppressive therapy, **OR** significant deterioration of organ symptoms (7.00F emphasis added). The Administrative Law Judge states that the Claimant is not experiencing any serious post transplantation complications. This is not correct and not an accurate recitation of the standard according to 7.00F; the very fact that she has Graft Versus Host Disease is a serious post transplantation complication.

For the same reasons the Administrative Law Judge committed reversible error in finding the Claimant does not meet or equal listing 13.06A. 13.06 mirrors 7.17. *See* 13.00K2cii.

(Doc. 15, pp. 6-7).

In response, the Commissioner argues:

***Listing 7.17:*** Listing 7.17 requires an ALJ to "[c]onsider under a disability for at least 12 consecutive months from the date of transplantation. After that, evaluate any residual impairment(s) under the criteria for the affected body system." 20 C.F.R. pt. 404, subpt. P, app. 1 § 7.17. This Listing also directs an ALJ to consider Section 7.00F, which states that "[w]e will consider you to be disabled for 12 months from the date of bone marrow or stem cell transplantation, or we *may* consider you to be disabled for a longer period if you are experiencing any serious post-transplantation complications, such as [GVHD], frequent infections after immunosuppressive therapy, or

Page 21 of 52

significant deterioration of organ systems." *Id.* § 7.00F (emphasis added).

As the ALJ correctly explained, Plaintiff failed to prove that she meets or equals all the criteria of Listing 7.17 (Tr. 18). The ALJ explained that Plaintiff was more than twelve months past her transplantation, as she underwent a bone marrow transplant in 2002, more than 16 years prior (Tr. 19, 462, 467).

The ALJ also found that Plaintiff was not experiencing any serious post-transplantation complications at the time of her medical improvement on March 1, 2018 (Tr. 18). Even in the years leading up to her medical improvement in 2012, 2013, and 2014, Plaintiff's GVHS was "largely" or "relatively" quiescent (Tr. 344, 377, 388). And, as noted by the ALJ later in his decision, by October 2017, Dr. Flomenberg confirmed that Plaintiff's leukemia was in remission, that "she has put most of her relapse risk behind her," and that despite her GVHD, she had not been on immunosuppressive medication since January 2017 (Tr. 21, 411-12, 417).

And notably, no medical consultant opined that Plaintiff equaled this Listing: in fact, the state agency physicians confirmed she could perform light to medium work (Tr. 18, 155, 157-59, 453-59). And notably, neither Dr. Hammerstein nor Dr. Flomenberg opined that Plaintiff was *per se* disabled pursuant to a Listing (Tr. 568-74, 577-81).

Although Plaintiff generally cites her GVHD diagnosis to argue that she meeting Listing 7.17, that diagnosis alone is insufficient (Pl.'s Br. at 6-7). *See* 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis."). As the ALJ recognized, the issue was whether Plaintiff was experiencing "*serious* post-transplantation complications" (Tr. 18) (emphasis added). Moreover, an ALJ "may," but is not required to, find disability due to GVHD under Section 7.00F. The record was clear that, despite her diagnosis, she did not have serious complications at the time of her medical improvement in March 2018 (Tr. 18).

***Listing 13.06A:*** Listing 13.06A required an ALJ to "[c]onsider under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or stem cell transplantation, whichever is later. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system." 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.06A.

The ALJ reasonably found that Plaintiff did not meet this Listing (Tr. 19). As the ALJ explained, Plaintiff was more than 12 months from her 2002 bone marrow transplant (Tr. 19, 462, 467). She was also more than 24 months from the date of diagnosis or relapse (Tr. 19). In fact, in 2017, Dr. Flomenberg noted there was "no evidence of disease recurrence since her matched related HSCT in 2002" (Tr. 411-412). And, as noted above, the ALJ correctly found that as of March 1, 2018, she was not experiencing any "serious post transplantation complications," and "no medical consultant has indicated that [Plaintiff] equals this listing" (Tr. 19). The ALJ reasonably found that Plaintiff did not meet all of the criteria for Listing 13.06 (Tr. 19).

(Doc. 18, pp. 13-16).

Plaintiff argues, based on the language in § 7.00F of the Listing of Impairments, that any leukemia patient diagnosed with GVHD following a bone marrow transplant must be found disabled under Listing 7.17 and 13.06(a), even if there is no evidence of significant symptoms resulting from the GVHD. Section 7.00F provides that:

We will consider you to be disabled for 12 months from the date of bone marrow or stem cell transplantation, or we may consider you to be disabled for a longer period if you are experiencing any serious post-transplantation complications, such as graft-versus-host (GVH) disease, frequent infections after immunosuppressive therapy, or significant deterioration of organ systems. We do not restrict our determination of the onset of disability to the date of the transplantation

in 7.17. We may establish an earlier onset date of disability due to your transplantation if evidence in your case supports such a finding.

Similarly § 13.00L provides the following guidance on how to evaluate cancer treated by bone marrow or stem cell transplantation:

> How do we evaluate cancer treated by bone marrow or stem cell transplantation, including transplantation using stem cells from umbilical cord blood? Bone marrow or stem cell transplantation is performed for a variety of cancers. We require the transplantation to occur before we evaluate it under these listings. We do not need to restrict our determination of the onset of disability to the date of the transplantation (13.05, 13.06, or 13.07) or the date of first treatment under the treatment plan that includes transplantation (13.28). We may be able to establish an earlier onset date of disability due to your transplantation if the evidence in your case record supports such a finding.

> . . . .

> 4.    Evaluating disability after the appropriate time period has elapsed. We consider any residual impairment(s), such as complications arising from:

> a.    Graft-versus-host (GVH) disease.

> b.    Immunosuppressant therapy, such as frequent infections.

> c.    Significant deterioration of other organ systems.

I am not persuaded by Plaintiff's argument. It is well-established that a diagnosis alone cannot form the basis of disability. 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis."). Although it is indisputable that GVHD can be a very serious complication following

Page 24 of 52

a bone marrow transplant, the ALJ's determination that as of March 1, 2018 Plaintiff
no longer experienced any significant complications due to GVHD. No party
disputes that Plaintiff was prescribed immunosuppressants due to GVHD, and was
waned off them in January 2017. Plaintiff still does occasionally take steroids when
she develops an infection, but did not need to do so at any point between March 2018
and August 2019. Thus, although Plaintiff did develop infections requiring steroid
treatment, they were not frequent during the relevant period. Plaintiff does not
suggest there has been deterioration of her other organ systems. Accordingly, I find
that the ALJ's decision that Plaintiff does not meet listings 7.17 and 13.06(a) at any
point between March 2018 and August 2019 is supported by substantial evidence.

### 2. Listing 14.10

In his decision, the ALJ found that Plaintiff did not meet listing 14.10. In
doing so, the ALJ explained:

> Furthermore, the undersigned also considered claimant's acute myeloid
> leukemia, and chronic graft versus host complicating bone marrow
> complications, under listing 14.10. Listing 14.10 requires involvement
> of two or more organs/body systems, with" one of the organs/body
> systems involved to at least a moderate level of severity; and at least
> two of the constitutional symptoms or signs (severe fatigue, fever,
> malaise, or involuntary weight loss); or repeated manifestations of
> Sjogren's syndrome, with at least two of the constitutional symptoms
> or signs (severe fatigue, fever, malaise, or involuntary weight loss) and
> one of the following at the marked level: limitations of activities of
> daily living, limitation in maintaining social functioning, and limitation
> in completing tasks in a timely manner due to deficiencies in

concentration, persistence, or pace. Here, claimant does not have involvement of two or more organs and body systems, and she does not have at least two of the following: severe fatigue, fever, malaise or involuntary weight loss. Further, no medical consultant has indicated that claimant equals this listing. As such, claimant does not meet or equal listing 14.10.

(Admin. Tr. 19).

Plaintiff argues:

The Administrative Law Judge also committed reversible error in finding that the Claimant did not meet listing 14.10 for Sjogren's syndrome. Claimant's physicians diagnosed Sjogren's Syndrome. She testified that she has pain every day. She had this pain in her eyes, esophagus, arms, legs and mouth. Listing 14.10 requires involvement of two or more organs or body systems with at least a moderate level of severity and at least two signs including fatigue, fever, malaise or involuntary weight loss OR repeated manifestations of Sjogren's Syndrome with at least two signs of severe fatigue, fever, malaise or weight loss and one of the following at the marked level: limitation of activities of daily living, limitation and maintaining social functioning, limitation and completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

Claimant's symptomology involves her eyes, esophagus, mouth, arms and legs. Consequently, at least two body systems are significantly affected. She also indicates that she has chronic fatigue, dry mouth and dry eye, all of which limit her ability to perform activities of daily living to no more than a few minutes without needing to stop and rest. She also testified that she has a marked limitation in maintaining any social functioning. As a result the Claimant has satisfied listing 14.10 for Sjogren's Syndrome.

(Doc. 15, pp. 7-8).

In response, the Commissioner argues:

Page 26 of 52

*__Listing 14.10:__* Listing 14.10 addresses Sjogren's syndrome, requiring:

    A.     Involvement of two or more organs/body systems, with:

          1.    One of the organs/body systems involved to at least a moderate level of severity; and

          2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

    OR

    B.     Repeated manifestations of Sjogren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.10. Despite the fact that Plaintiff was never diagnosed with Sjogren's, at the request of Plaintiff's attorney, the ALJ considered Plaintiff's impairments under this Listing (Tr. 19, 73-74). However, the ALJ explained that Plaintiff did not show the involvement of two or more organs or body systems, and did not show at least two constitutional symptoms (Tr. 19).

Plaintiff asserts that she meets this Listing due to symptoms involving her eyes, esophagus, arms, legs, and mouth, constituting at least two body systems (Pl.'s Br. at 7). Even if this were true, she does not and cannot show at least *two* of the constitutional symptoms under Subsections A or B. The record consistently notes Plaintiff was "negative" for fever (Tr. 405, 412, 427, 431, 437, 441, 472, 476, 480, 488, 491). The record never mentions malaise. And Plaintiff had no involuntary weight loss (*See* Tr. 405, 412 (negative for unexpected weight change), 429 (intentional weight loss following exercise and healthier diet), 431, 488 (no change in weight), 437 (negative for weight loss), 443, 494 (advised to lose weight)). Even given Plaintiff's general reference to fatigue (Pl.'s Br. at 7), she has no second symptom, and her references to dry eyes and dry mouth are not relevant (Pl.'s Br. at 7-8).

(Doc. 18, pp. 17-18).

Although Plaintiff challenges the ALJ's determination that her impairment does not affect multiple body systems, and does not result in marked social limitations, she does not cite to any evidence to support her position. To the extent she relies on her own statements, as explained in Section IV(E) of this opinion, those statements were properly discounted. Furthermore, Plaintiff has cited no evidence to support her position that the ALJ's determination she does not exhibit two constitutional symptoms or signs.[4] Accordingly, I am not persuaded that remand is required based on this argument.

D.   WHETHER THE ALJ PROPERLY EVALUATED THE PRIOR ADMINISTRATIVE MEDICAL FINDINGS & MEDICAL OPINIONS

In 2017, the Social Security Administration published revisions to the rules regarding the evaluation of medical evidence. These revisions became effective on March 27, 2017, and apply to claims filed on or after that date. The process of determining which regulations apply in a CDR case like this one, where the ALJ was required to both review the CDR determination and consider a new period of

---

[4] Section 14.00C(2) of the Listing of Impairments defines constitutional symptoms and signs as "severe fatigue, fever, malaise, or involuntary weight loss. Severe fatigue means a frequent sense of exhaustion that results in significantly reduced physical activities or mental function. Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00C(2).

disability. *See* SSR 13-3p, 2013 WL 785484 at *5. The determination of what regulation applies to the new period, depends on which regulation applied to the initial CDR decision.

In this case, the ALJ applied the old regulation—20 C.F.R. § 404.1527. In her brief, the Commissioner incorrectly argues that the new regulation—20 C.F.R. § 404.1520c—applies. (Doc. 18, p. 18 n.3). The following facts are relevant to this analysis:

(1)   Plaintiff's initial application for benefits was filed <u>before</u> March 27, 2017.

(2)   The comparison point decision in this case was issued on June 5, 2014.

(3)   Plaintiff filed her initial request for review of the termination decision on March 29, 2018.

Pursuant to the Social Security Administrations Program Operations Manual System ("POMS") and Hearings, Appeals, and Litigation Law Manual ("HALLEX") the old rule—20 C.F.R. § 404.1527—was applied in the initial decision terminating Plaintiff's benefits. POMS DI 24503.050(D)(7)(a) (explaining that if there has been a prior CDR, "[u]se the prior rules if the comparison point decision (CPD) is before March 27, 2017."); HALLEX I-5-3-30(E)(1) (same). Plaintiff's comparison point decision was issued in June 2014, so the old regulation (20 C.F.R. § 404.1527) applied to the initial decision terminating her benefits.

Pursuant to POMS and HALLEX, when a medical cessation or termination decision is appealed and a new period of disability is considered, as it was here, the old rule (20 C.F.R. § 404.1527) applies if the initial request for review of the determination was filed on or after March 27, 2017 and the old rule was used in the initial medical cessation decision. POMS DI 24503.050(D)(7)(a) (explaining that if the initial request for review was filed "[o]n or after March 27, 2017 and the prior rules were used when finding medical cessation, use the prior rules to evaluate the new period of disability."); HALLEX I-5-3-30(E)(1) (same). Plaintiff's appeal was filed in March of 2018, and the old rule (20 C.F.R. § 404.1527) was applicable to the medical cessation/termination decision. As such, I find that the ALJ applied the correct regulation in his decision.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence.  20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight

we give your treating source's medical opinion."). "Where a conflict in the evidence

exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason

or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting*

*Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

2000).

       1.    Opinion by State Agency Medical Consultant Crescenzo Calise, M.D.

On March 9, 2018, as part of the initial decision to terminate Plaintiff's

benefits, Dr. Calise assessed Plaintiff's current RFC based on the evidence available

at the time. Dr. Calise assessed that Plaintiff could: occasionally lift and/or carry up

to twenty pounds; frequently lift and/or carry up to ten pounds; sit (with normal

breaks) up to six hours per eight-hour workday; stand and/or walk (with normal

breaks) for a total of six hours per eight-hour workday; and occasionally climb

ramps, climb stairs, climb ladders, climb ropes, climb scaffolds, balance, stoop,

kneel, crouch, and crawl. (Admin. Tr. 157-159). In support of this assessment, Dr.

Calise explained:

> PULM/CHEST: Effort normal and breath sounds normal. No
> respiratory distress. She has no wheezes. She has no rales. ABD: the
> abdomen is soft, Bowel sounds are normal. She has no distension. no
> ma[ss] is present. There is no tenderness. There is no rebound and no
> guarding, MUSC/SKEL: there is no peripheral edema, tenderness or
> deformity. LYMPH: No cervical adenopathy. No axillary adenopathy •
> Right neck: No supraclavicular adenopathy. • Left neck. No

supraclavicular adenopathy. • Right groin: No inguinal adenopathy. • Left groin: No inguinal adenopathy. NEURO: she is alert. No cranial neve deficit. She exhibits normal muscle tone. Gait normal. SKIN. Skin is warm and dry. No rash noted. She is not diaphoretic. There is no erythema.

There is no pallor.

ADL's no difficulty, avoids being in heavily crowded areas during cold and flu season.

The claimant has described daily activities that are not significantly limited in relation to her alleged symptoms.

The treatment for the above-cited conditions has been essentially routine and conservative most recently.

The claimant has been prescribed, and has taken appropriate medications for the alleged impairments. The medical records reveal that the medications have been relatively effective in controlling her symptoms.

Claimant had no contact with field office personnel.

Based on the evidence of record, the claimant's statements were found to be partially consistent.

Considering the totality of the evidence in file, the claimant would be able to sustain essential work related activities at an [sic] this exertional level on a regular and continuing basis.

*Id.*

In his decision, the ALJ found that Dr. Calise's opinion was "persuasive." In

doing so the ALJ explained:

As it pertains to claimant's physical functioning, the undersigned considered the state agency assessment of Crescenzo Calise, MD, and

found it persuasive (Exhibit CDR 1A). Dr. Calise opined claimant is capable of light work, with postural limitations. Dr. Calise's opinion is supported by, and consistent with, the longitudinal record. Specifically, the examinations by claimant's providers, which note mild objective signs and findings, as well as her history of acute myeloid leukemia, and continuing treatment for graft versus host disease. For these reasons, the opinion of Dr. Calise is persuasive.

(Admin. Tr. 22).

Plaintiff argues:

The Administrative Law Judge relies on a disability consultant opinion to find that the Claimant is not continuously disabled. (R. 22). However, this physician did not have the benefit of the entirety of the record and thus his opinion cannot be considered probative or persuasive.

(Doc. 15, p. 10).

In response, the Commissioner argues:

Plaintiff asserts that the ALJ erred in assessing the persuasiveness of these findings because Dr. Carlise [sic] did not review the entire record (Pl.'s Br. at 10-11). But this is not a reason to disturb the ALJ's analysis. The ALJ found that Dr. Calise's findings were consistent with the "longitudinal record," necessarily referring to any records not available at the time Dr. Calise offered his findings (Tr. 22). Under the applicable regulatory framework, this means that one of the "most important factors" militated towards finding the opinion persuasive. *See* 20 C.F.R. § 404.1520c(b)(2), (c). Although the regulation references "a medical source's familiarity with the other evidence in the claim" as an "other factor," this factor is not as important as "consistency," and the ALJ was not required to discuss it. *Id.*

(Doc. 18, pp. 22-23).

I am not persuaded that remand is required merely because Dr. Calise's opinion

was issued early in the CDR process. As other courts have observed, an ALJ is

Page 34 of 52

entitled to rely upon the findings of an agency consultant even if there is a lapse of time between the report and the hearing. *Chandler v. Astrue*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."); *Richabaugh v. Berryhill*, 271 F. Supp.3d 721, 737 (D. Del. 2017). The passage of time, without more, is not an adequate basis to require remand. *See e.g. Grimes v. Colvin*, 2016 WL 246963 at *2-3 (W.D. Pa. Jan 21, 2016) (remanding where an ALJ relied on a 16-month-old medical opinion issued in 2012 that was issued before a significant deterioration in the claimant's condition that occurred after claimant was injured in a motor vehicle accident).

       2.     Opinion by State Agency Medical Consultant Mark Bohn, M.D.

On June 7, 2018, as part of the reconsideration stage of review, Dr. Bohn completed a check-box RFC assessment. Dr. Bohn assessed that Plaintiff could: occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk (with normal breaks) six hours per eight-hour workday; sit (with normal breaks) six hours per eight-hour workday; frequently climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, climb ropes, and climb scaffolds; and had no vision limitations. He also assessed that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat,

wetness, humidity, fumes, odors, gases, poor ventilation, and hazards due to

"infection risk." Under "additional comments" Dr. Bohn wrote:

> HX leukemia, had bone marrow transplant with good results. In remission. Labs good. Has recurrent graft vs host reactions but controlled with meds. Exams show BMI 30, AAOx3. vision, speech, hearing good. Heent / lungs / heart / bp . abd / extr / neuro good. ADL; does routine chores drives, cares for family.

(Admin. Tr. 452-459).

On a form titled "Medical Evaluation" Dr. Bohn wrote:

Has HX bone marrow transplant for AML.

> Current reports show ADL good, does chores, cares for family, drives. On prophylactic meds only. Current has mild GVH recurrences and mold ovese but overall heent / lungs / heart / bp / abd / extr / neuro are wnl. Medical improvement has occurred.

(Admin. Tr. 460).

In his decision, the ALJ found that Dr. Bohn's opinion was "somewhat

persuasive." In doing so, the ALJ explained:

> The undersigned considered the state agency physical residual functional capacity assessment of Mark Bohn, MD, and found it somewhat persuasive (Exhibit 7F, 8F). Dr. Bohn opined claimant is capable of heavy work, with postural and environmental limitations. This assessment is generally consistent with evidence of record since March 2018. Specifically, the record notes significant improvement in symptomatically and she no longer takes Cellcept medication. Furthermore, the claimant's examinations do not reflect objective deficits to support a reduction in exertional level. However, the undersigned has afforded deference to the claimant's subjective reports of ongoing symptomatology given her history of acute myeloid leukemia, and graft versus host disease. As such, the undersigned has

Page 36 of 52

further reduced the claimant to light exertion work to fully
accommodate her ongoing symptomology. For these reasons, the
opinion of Dr. Bohn is only somewhat persuasive.

(Admin. Tr. 23).

Plaintiff argues:

The ALJ also considered the opinion of a second disability agency
consultant, Dr. Bohn, as somewhat persuasive. Yet, Dr. Bohn in his
evaluation does not even address whether the Claimant's condition
meets or equals a listing or constitutes any medical improvement. (R.
450-451).

The longitudinal record documents ongoing physical problems
associated with the Claimant's physical impairments such that no
medical improvement has occurred since the initial award of benefits.
There has been no decrease in the medical severity of her impairments
as established by any type of symptoms, signs or laboratory findings.
These impairments in combination significantly limit the Claimant's
ability to do even basic work activities.

(Doc. 15, pp. 10-11).

In response, the Commissioner argues:

Plaintiff argues the ALJ erred in his evaluation of Dr. Bohn's findings
because that doctor did "not even address" whether Plaintiff met or
equaled a Listing or had medical improvement (Pl.'s Br. at 10-11). This
argument misses the mark. Dr. Bohn made prior administrative medical
findings that Plaintiff could perform medium work; frequently perform
most postural activities, but occasionally limb ladders, ropes or
scaffolds; and should avoid concentrated exposure to certain
environmental conditions (Tr. 453-59). And, as noted above, Dr. Bohn
noted Plaintiff's improved condition (Tr. 459). Thus, the ALJ
appropriately considered Dr. Bohn's findings as contemplated by the
regulatory framework. *See* 20 C.F.R. §§ 404.1513(a)(5) (the RFC is a
prior administrative medical finding), 404.1513a(b)(1) (requiring ALJs

to consider prior administrative medical findings under Section 404.1520c).

(Doc. 18, pp. 24-25).

I am not persuaded by Plaintiff's argument that the ALJ's analysis is defective. First, Plaintiff cites no authority to support her position that Dr. Bohn was required to conduct a listing analysis. Second, Plaintiff has cited no evidence in support of her position that her medical condition is unchanged. In his summary of the evidence, the ALJ cited substantial evidence to support his assessment.

### 3. Treating Source Kristen Hammersmith, M.D. & Treating Source Neal Flomenberg, M.D.

On July 9, 2019, Dr. Hammersmith—Plaintiff's ophthalmologist--completed a check-box medical source statement on Plaintiff's behalf. (Admin. Tr. 569-574). In her medical source statement, Dr. Hammersmith assessed that Plaintiff could: avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; read ordinary newspaper or book print; and determine differences in shape and color of small objects such as screws, buts, or bolts. Dr. Hammersmith assessed that Plaintiff would not be able to view a computer screen. Dr. Hammersmith checked boxes for both "yes" and "no" in response to a question about whether Plaintiff could read very small print. In support of her assessment, Dr. Hammersmith explained:

Page 38 of 52

GVHD affecting the eyes leading to severe dry eye, photophobia and difficulty reading for <u>any</u> duration of time or working on the computer.

(Admin. Tr. 573).

In his decision, the ALJ found that Dr. Hammersmith's opinion was not persuasive. In doing so, the ALJ explained:

> The undersigned considered the medical source statement of Kristen Hammersmith, MD, and did not find it persuasive (Exhibit CDR 18F/3). Dr. Hammersmith opined claimant's graft versus host disease leads to severe dry eyes, photophobia, and difficulty reading for any duration of time or working on the computer. Dr. Hammersmith's opinion is not consistent with, or supported by, the longitudinal record, or her office visit note from June of 2019. When Dr. Hammersmith saw claimant in June of 2019, she noted that claimant had started serum tears, felt great, and was much improved symptomatically. Further, within that record there is no mention of photophobia or of claimant having difficulty reading or working on the computer (Exhibit CDR 10F). Moreover, she also indicates claimant is able to avoid ordinary hazards in the workplace, such as boxes on the floor, ajar doors, or approaching people or vehicles, and that she is able to read ordinary newspaper or book print. For these reasons, the opinion of Dr. Hammersmith is not persuasive.

(Admin. Tr. 23).

On July 24, 2019, two weeks after Dr. Hammersmith completed her medical source statement, Dr. Flomenberg—a medical oncologist—completed a check-box medical source statement. (Admin. Tr. 577-582). Like Dr. Hammersmith, Dr. Flomenberg only completed the portions of that form related to Plaintiff's vision. Dr. Flomenberg assessed that Plaintiff: could <u>not</u> avoid ordinary hazards in the

workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; could <u>not</u> read very small print; could <u>not</u> read ordinary newspaper or book print; could <u>not</u> view a computer screen; and could <u>not</u> determine differences in shape and color of small objects such as screw, nuts, or bolts. *Id.* Dr. Flomenberg also assessed that Plaintiff should avoid direct sun exposure. In support of his opinion, Dr. Flomenberg explained:

> The patient has chronic graft versus host disease affecting her vision and immune system.
>
> . . . .
>
> Dry irritated eyes—vision will vary depending on degree of irritation—cannot assess specifics—sees a specialist at Wills Eye.
>
>  . . . .
>
> Cannot have direct sun exposure.
>
> The patient has chronic graft versus host disease. Eyes/skin vision is very affected. Skin with pruritus and recurring intermittent steroid use (systemic therapy). The chronic graft versus host disease and use of steroids affect immune function leaving patient at high risk of infection.

*Id.*

In his decision, the ALJ found that Dr. Flomenberg's opinion was not persuasive. In doing so, the ALJ explained:

> The undersigned considered the medical source statement of Neal Flomenberg, MD, and did not find it persuasive (Exhibit CDR 19F). Dr. Flomenberg opined claimant's chronic graft versus host disease affects her vision and immune system, stating that her vision will

depend on the degree of irritation, but the specifics cannot be assessed. Moreover, he opined claimant could not have exposure to direct sunlight. In support of this opinion, he indicates claimant is seeing a specialist at Wills Eye, has skin pruritus, and requires intermittent steroid use (systematic therapy), and that the use of steroids affect her immune function, leaving her at high risk of infection. Dr. Flomenberg's opinion is not consistent with, or supported by the longitudinal record, in particular, the most recent office visit from his dated October 10, 2017. The note from October 10, 2017 indicates that claimant's eye symptoms are stable, and that although she had a recent flare of pruritus it was controlled with diphenhydramine. Nowhere within his note does he reference claimant's inability to be in direct sunlight, and there is not discussion about her immune function. Furthermore, although Dr. Flomenberg referenced the Wills eye records, for the reasons noted in the discussion of Dr. Hammersmith's opinion, they do not support Dr. Flomenberg's opinion. As such, the opinion of Dr. Flomenberg is not persuasive.

(Admin. Tr. 23).

Plaintiff argues:

The Administrative Law Judge states that there is no mention by Dr. Hammersmith of any difficulty with photophobia or reading or working on a computer. (R. 23). Yet Dr. Hammersmith specifically states that the Graft Versus Host Disease affects the eyes leading to severe dry eye, photophobia and difficulty reading for any duration of time or working on the computer. (R. 573).

As to Dr. Flomenberg the Administrative Law Judge basically dismisses Dr. Flomenberg's opinion for the same reasons [as Dr. Hammersmith]. (R. 23). Yet Dr. Flomenberg states the claimant has chronic Graft Versus Host Disease affecting the eyes and immune system. She cannot have direct sun exposure. Her skin is affected. Her vision is affected. She suffers with pruritus requiring intermittent steroid use which affects her immune system putting her at a high risk of infection. (R. 581). Dr. Flomenberg further states that the Claimant is unable to avoid ordinary hazards in the work place, has difficulty

reading newspapers or books for any length of time, and cannot operate a computer screen due to her severe difficulties. (R. 580). These findings are consistent with the longitudinal record as well as the Claimant's consistent complaints not only to Social Security but to her physicians.

(Doc. 15, pp. 11-12).

In response, the Commissioner argues:

Plaintiff takes issue with the ALJ's evaluation of these opinions (Pl.'s Br. at 11-12). She asserts that Drs. Hammersmith and Flomenberg found Plaintiff incapable of sustained work activity; but these opinions contain no such statement. (Tr. 568-74, 577-81). And although Plaintiff suggests Dr. Hammersmith's opinion is supported by the record, she is merely reciting the opinion itself (Pl.'s Br. at 11, citing Tr. 573). As the ALJ correctly recognized, the treatment notes, on the other hand, contain no such findings (*See, e.g.,* Tr. 464-65). Similarly, Plaintiff merely states Dr. Flomenberg's assessed limitations and asserts that his findings were consistent with the record and her complaints (Pl.'s Br. at 12). This is merely a request to reweigh the evidence, contrary to the standard of review. *Chandler*, 667 F.3d at 359 (the Court is "not permitted to reweigh the evidence or impose their own factual determinations."). Moreover, Plaintiff's argument is conclusory—in fact, her brief contains no citations in support of her argument.

(Doc. 18, pp. 26-27).

I am not persuaded by Plaintiff's argument that the ALJ improperly discounted the vision limitations assessed by Doctors Hammersmith and Flomenberg. The ALJ cited to substantial objective evidence to support his assessment.

E.     WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S STATEMENTS
       ABOUT HER SYMPTOMS

In his decision, the ALJ provided the following summary of Plaintiff's

testimony:

> The claimant alleges she continues to be disabled due to acute myeloid
> leukemia, dry eye syndrome, graft versus host disease, and due to being
> immunosuppressed (Exhibit CDR 2B, 3B, 4B/3). Due to her
> impairments, claimant testified she has pain every day in her eyes,
> esophagus, arms and legs and in her mouth due to sores. Claimant
> testified she can walk for 10 minutes and stand for 20 minutes before
> she has an increase in her pain and becomes tired, requiring her to rest
> for a half hour. Claimant also indicated that she cannot stoop and squat
> as she loses her balance, and although she can climb a flight of stairs,
> she has heart palpitations, is winded, and out of breath when she reaches
> the top. Claimant further testified she reads books every day on her iPad
> for twenty minutes at a time, and uses her laptop to pay bills, shop
> online, go on social media, and send emails. In addition, claimant
> testified she is winded from vacuuming, and must sit and rest after 10
> minutes. Moreover, she stated she sleeps approximately six hours a
> night, waking once during the night, and naps every day for
> approximately an hour due to being tired. When she goes outside,
> claimant needs to wear sunglasses. She also explained that her
> medications cause her to be tired and fatigued, as well as dry mouth and
> dry eyes (Hearing Record). Overall, the claimant alleges she has been
> unable to sustain any type of gainful employment due to her
> combination of impairments and symptomatology.

(Admin. Tr. 21).

In his decision, the ALJ found that Plaintiff's "statements have been found to

affect the claimant's ability to work only to the extent they can reasonably be

Page 43 of 52

accepted as consistent with the objective and other medical evidence." *Id.* In doing

so, he provided a summary of the relevant evidence, and explained that:

> Taking the forgoing into consideration, a review of the record as a whole does not support greater limitations. Overall, the longitudinal evidence of record since March 1, 2018, does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Here, the records reflect claimant's acute myeloid leukemia is in remission, and that she has not received any immune suppression medication since January of 2017. Furthermore, in regards to her graft versus host disease, the records reflect that it is stable, with physical examination reflecting mild findings. Simply stated the records do not correlate with the claimant's alleged level of debilitating ongoing symptoms.

(Admin. Tr. 22).

The Commissioner's regulations define "symptoms" as the claimant's own

description of his or her impairment. 20 C.F.R. § 404.1502(i). The ALJ is not only

permitted, but also required, to evaluate the credibility of a claimant's statements

about all symptoms alleged and must decide whether and to what extent a claimant's

description of his or her impairments may be deemed credible. In many cases, this

determination has a significant impact upon the outcome of a claimant's application,

because the ALJ need only account for those symptoms – and the resulting

limitations – that are credibly established when formulating his or her RFC

assessment. *Rutherford*, 399 F.3d at 554. To facilitate this difficult analysis, the

Commissioner has devised a two-step process that must be undertaken by the ALJ to evaluate a claimant's statements about his or her symptoms.

First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptom alleged. 20 C.F.R. § 404.1529(b). If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1529(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with objective medical evidence and other evidence of record. 20 C.F.R. § 404.1529(c)(4). However, an ALJ will not reject statements about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. § 404.1529(c)(3). Instead, the ALJ will evaluate the extent to which any unsubstantiated symptoms can be credited based on the following factors: the

claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554.

Plaintiff argues:

The Administrative Law Judge stated that the Claimant's statements are inconsistent with the objective medical and other evidence. This is a

general statement without any explanation by the Administrative Law Judge. (R. 22). Contrary to the Administrative Law Judge's statement, the Claimant's testimony is consistent throughout the course of these proceedings. For example, at the reconsideration level she made the same statements regarding her limitations. (R. 174, 177, 179-82). In addition, her husband made the same statements with respect to the Claimant's limitations. (R. 181).

. . . .

The Administrative Law Judge stated that since March 1, 2018 the record reflects no real abnormalities on physical examination. (R. 21). Yet on multiple occasions at treatment at Geisinger the Claimant has demonstrated and documented choking on food and stamina issues. (R. 472), complications of the bone marrow transplant, (R. 475) fluttering in her chest, (R. 480), fluttering in her chest and palpitations, (R. 485), palpitations, rash and itching, (R. 491), gastroesophageal reflux disease with esophagitis, palpitations and Graft Versus Host Disease, (R. 494). In addition the Administrative Law Judge did not address the Jefferson records where the same symptoms are described on two separate evaluations. (R. 462-467). In addition treatment with her family physician documents the same symptoms including body itch and red rash on 4/22/19. (R. 514-515).

. . . .

The Administrative Law Judge improperly discounted Ms. Tolan's testimony. The limitations that Ms. Tolan described in her testimony are supported throughout the record by her and her spouse's written documentation and medical evidence from treating sources. *Ferguson v. Schweiker*, 765 F.2d 31 (3rd Cir. 1985). The record clearly establishes that Ms. Tolan is not capable of performing any type of substantial gainful activity. The Administrative Law Judge finding that she can is not based on the substantial competent evidence. The Administrative Law Judge finding that her condition has improved since the initial determination of entitlement lacks support in the subjective and objective evidence of record. This is not a case of the Administrative Law Judge properly exercising his discretionary

authority. This is a case of the Administrative Law Judge completely abusing his discretionary authority by ignoring evidence of record.

(Doc. 15, pp. 8, 10, 13).

In response, the Commissioner argues:

The ALJ reasonably determined that Plaintiff's subjective complaints were not entirely consistent with the record (Tr. 21). In doing so, the ALJ considered the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) ("[o]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ."). For example, the ALJ noted that Plaintiff's acute myeloid leukemia was in remission (Tr. 21, 411). The ALJ also explained that despite her GVHD, the record reflected no mouth sores, throat lesions, or ulcerations, and no distention in the abdomen, no masses, and no abdominal tenderness, rebounding, or guarding (Tr. 21, 414, 474, 478, 483, 488, 491, 494). Aside from one examination, her kin reflected no rash, no pallor or erythema (Tr. 21, 415, 488, 491, 493). The ALJ noted that although eye examinations showed scleral injection greater in the left than right eye, it also reflected normal conjunctivae, no discharge, and no scleral icterus (Tr. 21, 414, 464).

The ALJ also considered the effectiveness of Plaintiff's treatment (Tr. 21). *See* 20 C.F.R. § 404.1529(c)(3)(v); *Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"). As the ALJ noted, Plaintiff was off all immunosuppressants as of January 2017, and Dr. Flomenberg noted that she had put most of her relapse risk behind her (Tr. 21). Dr. Flomenberg found that Plaintiff's eye symptoms were stable; a recent flare of pruritus was controlled with medication; and she had no stigmata of GVHD (Tr. 21, 416-17). Moreover, Dr. Hammersmith noted that Plaintiff felt "great" with serum tears and was much improved symptomatically (Tr. 22, 464). As the ALJ noted, Plaintiff no longer took Cellept (a medication that weakens the immune system), and did not require prescriptions for Medrol dosepaks as of March 1, 2018 (Tr. 22, 447).

The ALJ reasonably considered that Plaintiff was able to perform a variety of activities (Tr. 22). 20 C.F.R. § 404.1529(c)(3)(i); *Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002) (ALJ appropriately considered contradictory activities in evaluating subjective statements). She cared for personal needs, performed light household chores, cooked, read, and used the computer (Tr. 22, 39-40, 51-56, 51). Although the ALJ acknowledged that Plaintiff had some limitations, none of her activities were dispositive, and they merely suggested an ability to perform work in conjunction with the medical evidence. (Tr. 22).

(Doc. 18, pp. 28-31) (internal footnote omitted).

Plaintiff's credibility argument is two-fold. First, she suggests that the ALJ incorrectly determined that the longitudinal objective evidence did not support Plaintiff's statements. Second, she suggests that her testimony should be credited pursuant to SSR 16-3p because it is consistent with her own statements throughout the record. I am not persuaded by either argument.

In support of her position that her statements are supported by the longitudinal objective evidence, Plaintiff relies primarily on her own statements summarized by medical sources in treatment records. (Admin. Tr. 472) (noting patient concerns of palpitations when walking up stairs, and one or two episodes of acid reflux per week); (Admin. Tr. 485) (reporting infrequent palpitations, longest episode 15-30 seconds with no clear triggers); (Admin. Tr. 491) (reporting palpitations, echocardiogram unremarkable). These statements are not objective evidence, and are insufficient to undermine the ALJ's conclusion.

Page 49 of 52

Plaintiff also cites evidence relating to the nature of her treatment and diagnoses, which she argues supports her testimony. (Admin. Tr. 475) (noting a diagnosis of graft versus host disease); (Admin. Tr. 514-15) (noting that Plaintiff developed a rash that was almost resolved caused by a new medication on April 22, 2019); (Admin. Tr. 494) (noting diagnoses of GERD that is well controlled on current regimen, a diagnosis of GVHD, and a rash on April 24, 2019). I am not persuaded that these diagnoses, and the presence of a rash in April 2019 believed to be caused by an allergic reaction to a new medication are enough to undermine the ALJ's evaluation that Plaintiff's statements about her limitations were not consistent with the record. In his decision, the ALJ noted that: Plaintiff's leukemia was in remission; Plaintiff has had no mouth sores, throat lesions or ulcerations since March 2018; there were no skin rashes except for the medication allergy in April 2019; eye exams were normal, and Plaintiff "felt great" while using serum tears; and Plaintiff stopped taking immunosuppressants in January of 2017.(Admin. Tr. 21-22). I am not persuaded that the evidence cited by Plaintiff overwhelms the evidence cited by the ALJ. Therefore, remand is not required.

Turning to Plaintiff's second argument, Plaintiff is correct that SSR 16-3p explains that:

> In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities

to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.

We will consider statements an individual made to us at each prior step of the administrative review process, as well as statements the individual made in any subsequent or prior disability claims under titles II and XVI. *If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another **and** consistent with the objective medical evidence **and** other evidence in the record, we will determine that an individual's symptoms are more likely to reduce his or her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner.* However, inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.

2017 WL 5180304 at *8-9 (emphasis added). I am not, however, persuaded that the

consistency of Plaintiff's statements, without more, is a basis for remand in this case.

First, Plaintiff's statements were not discounted based on any inconsistency between

her statements. Second, the ALJ found that Plaintiff's statements about her

symptoms were *not* consistent with the objective medical record, and cited ample

evidence to support that conclusion. Remand is not required for further evaluation

of Plaintiff's statements about her limitations.

V.    CONCLUSION

Accordingly, the Court concludes that Plaintiff's request for relief  will be

DENIED as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner.

(3)    An appropriate order will be issued.


Date: March 28, 2022                       BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge